

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 13, 2023**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **Donald Roy Seilheimer,** | § | **Case No. 23-30671-SGJ-13** |
| | § | |
| | § | **Hearing: August 28, 2023** |
| **Debtor.** | § | **9:30 A.M.** |

### Findings of Fact and Conclusions of Law and Order Denying Debtor's Motion to Dismiss Chapter 13 Bankruptcy Case
[docket no. 44]

The Court has held hearings on its Show Cause Order on June 20, July 17, August 21 and August 28, 2023, and held concurrent hearings on the *Dismissal Motion on* August 21 and August 28, 2023. Based on the testimony and evidence admitted in the hearings, the Court makes the following **Findings of Fact and Conclusions of Law.**

1

## Findings of Fact

1.    Donald Roy Seilheimer ("Mr. Seilheimer" or "Debtor") is a 76-year-old retired individual living at 1509 Perryton, Dallas, Texas 75224 ("1509 Perryton").

2.    Mr. Seilheimer does not have any living relatives.

3.    In approximately 2019, Mr. Seilheimer had a brain aneurysm.[1]

4.    Mr. Seilheimer owned two pieces of property; one at 1509 Perryton Drive, Dallas Texas, the other at 2910 Perryton Drive, Dallas Texas. Both properties were inherited from Mr. Seilheimer's mother, Sheila Seilheimer who died on November 14, 2013.[2]

5.    Donald Seilheimer was appointed Independent Executor of his mother's estate, however Letters Testamentary have not been issued for failure to file the Inventory, Appraisement and List of Claims and unpaid Show Cause Fees due. [3]

6.    This case, as well as the three previous bankruptcy cases filed by Mr. Seilheimer, were filed to prevent the foreclosure of these pieces of real property.

## N3AP Justice Center

7.    In late 2019, Mr. Seilheimer met an individual named Rufus Hampton ("Hampton"), who also goes by Pastor Hampton[4]. Hampton is not a licensed attorney and did not attend law school. Hampton has a degree in accounting from Mississippi State University.[5]

8.    Hampton worked at the Internal Revenue Service for approximately 10 and a half years, until 1987 when he was dismissed.[6] Hampton claims to be an expert in tax law and therefore

---

[1] Transcript of 341 Meeting in Case 20-30081, conducted February 13, 2020. Trustee Exhibit T-1.
[2] Trustee Exhibit T-15.
[3] Trustee Exhibit T-16B.
[4] Transcript of July 17, 2023, Show Cause hearing; 37:6-9. Trustee Exhibit T-18.
[5] Transcript of July 17, 2023 Show Cause hearing; 46:14-16. Trustee Exhibit T-18.
[6] Transcript of July 17, 2023, Show Cause hearing; 46:17-24; 47:6-7. Trustee Exhibit T-18.

an expert in civil law. Hampton claims civil law is a piece of cake. When he left the Internal

Revenue Service, he filed a *pro se* complaint alleging racial discrimination, harassment, and threats

of reprisal in Federal Court. All of his claims were dismissed.[7]

9.    Since Hampton left the IRS, he has worked in various jobs in the accounting field.

10.    Based on those experiences, Hampton formed and operates N3APJC, Inc., which also

does business as N3AP Justice Center (Collectively, "N3AP"). Hampton is listed as the registered

agent of N3AP.[8] N3AP holds itself out as a business that provides legal and tax services.  Hampton

also does business through an entity named Hillcrest Antioch Ministries, Inc.[9]

11.   Although Hampton indicates he is a pastor, he admits he is not a "religious pastor".[10]

However, Hampton has "members" in his legal and tax consulting business.[11] Hampton has been

working with and advising Mr. Seilheimer in financial matters since at least 2020.[12]

**Previous Seilheimer Bankruptcy Cases**

**First Seilheimer Case**

12.   On November 5, 2019, Mr. Seilheimer filed case 19-33748-HDH-13, with the

assistance of counsel Bruce Long, Esq. ("First Seilheimer Case").  On December 5, 2019, Mr.

Seilheimer filed his Schedules of Assets and Liabilities.  ("Seilheimer Schedules"). [case no. 19-

33748, docket no. 20].

13.   The Seilheimer Schedules reflect the following assets:

---

[7] Trustee Exhibit T-14.
[8] Secretary of State information for N3APJC, Inc.
[9] Hampton is named as the Director and Registered Agent in the Secretary of State information for Hillcrest Antioch
Ministries, Inc.
[10] Transcript: July 17, 2023 Show Cause Hearing, 44:16-45:19. Trustee Exhibit T-17.
[11] Transcript July 17, 2023 Show Cause Hearing, 46:1-11. Trustee exhibit T-18.
[12] Both Hampton and Mr. Seilheimer appeared at the 341 Meeting of Creditors on February 13, 2020 in case 20-
30081.

a.  Real property at 1509 Perryton Drive, Dallas Texas 75224 valued at $192,840.00;

b.  Real property at 2910 Perryton, Dallas Texas 75224 valued at 126,850.00;

c.  A non-producing mineral interest in Ochiltree County, Texas valued at $5.00;

d.  A non-producing mineral interest in Jefferson County, Mississippi valued at $5.00;

e.  Total household goods, electronics, jewelry and clothing valued at $1,300.00;

f.  Cash and coins stored in Debtor's safety deposit box in the amount of $500.00;

g.  A checking account at First Convenience Bank xxx-3554 with $15.00;

h.  A savings account at Bank of America xxx-38113 with $55.00;

i.  A checking account at Bank of America xxx-28643 with $300.00; and

j.  A potential claim for fraud and damages against Robert Brown arising from a real estate contract for an unknown amount.

14.  Schedule G indicates that in 2019, Mr. Seilheimer was leasing a room from Kingdom Outreach Ministries at 2657 Marfa Ave., Dallas Texas 75216 following a brain aneurysm in May 2019 at $550.00 a month and he expected to return to independent living in mid-2020.

15.  Schedule I states Mr. Seilheimer's monthly income is $2,900.00 consisting of food stamps and rent of 2910 Perryton and 1509 Perryton.  Schedule J states Mr. Seilheimer's monthly expenses total $1,441.00.

16.  On December 5, 2019, Mr. Seilheimer filed a Statement of Financial Affairs. ("SOFA"). [case no. 19-33748, docket no. 21]. SOFA question 5 states Mr. Seilheimer also receives annual Social Security Benefits of $14,400.00. [case no. 19-33748, docket no. 21]. SOFA question 21 states Mr. Seilheimer has a safety deposit box with important papers and silver coins.

[case no. 19-33748, docket no. 21].

17.   On November 22, 2019, the First Seilheimer Case was dismissed for failure to file paperwork, including schedules, statement of financial affairs and statement of current monthly income. [case no. 19-33748, docket no. 15]. On November 27, 2019, Mr. Seilheimer filed a Motion to Vacate Dismissal Order and Reinstate Case ("Motion to Vacate") [case no. 19-33748, docket no. 16].

18.   The Motion to Vacate states:

> 3.)  Debtor initially decided not to proceed with the bankruptcy and instead to address his secured and unsecured debts by the sale of certain real property.
>
> 4.)  On the date of this filing, Debtor has reconsidered his options and considers bankruptcy to be a better option than the sale of real property.
>
> 5.)  Debtor would show that he intends henceforth to comply with the bankruptcy court requirement of filing schedules timely.
>
> 6.)  Debtor request that this Court set aside the Order of Dismissal and reinstate Debtor's Chapter 13 case.

19.   On January 15, 2020, Mr. Seilheimer withdrew the Motion to Vacate.  [case no. 19-33748, docket no. 31]

**Second Seilheimer Case**

20.   On January 6, 2020, Mr. Seilheimer filed case 20-30081-HDH-13. ("Second Seilheimer Case"). Mr. Seilheimer filed the Second Seilheimer Case *pro se*. The Second Seilheimer Case was filed while the Motion to Vacate was pending in the First Seilheimer Case.

21.   The Petition in the Second Seilheimer Case reflects the following as Mr. Seilheimer's Mailing address:

5. Where you live

| | If Debtor 2 lives at a different address: |

3530 Judge Dupree
Number     Street

Dallas                      TX     75241
City                        State   ZIP Code

Dallas
County

If your mailing address is different from the one
above, fill it in here. Note that the court will send
any notices to you at this mailing address.

Hillcrest Antioch Ministries
Number     Street
11011 Garland Road
P.O. Box

Dallas TX                        75218
City                      State   ZIP Code

Number     Street

City                        State   ZIP Code

County

If Debtor 2's mailing address is different from
yours, fill it in here. Note that the court will send
any notices to this mailing address.

Number     Street

P.O. Box

City                      State   ZIP Code

22.  Hillcrest Antioch Ministries' registered agent is Rufus Hampton.

23.  The Petition does not list any email address for Mr. Seilheimer. The Petition does indicate the Debtor's phone number is 214-586-4652.  [case no. 20-30081, docket no. 1]. This phone number is identical to the phone number of Hampton in the Motion to Dismiss, *infra* ¶ 77.

24.  The Petition does not indicate whether Mr. Seilheimer received any assistance in filling out his bankruptcy forms.  The Petition fails to disclose any amount Mr. Seilheimer paid for bankruptcy petition preparation services.

25.  Concurrently with filing his Petition, Mr. Seilheimer filed Schedules and a SOFA. [case no. 20-30081, docket no. 1]. Schedule A/B states Mr. Seilheimer owns real property at 1509 Perryton Drive, Dallas Texas, and 2910 Perryton Drive, Dallas Texas.  [case no. 20-30081, docket no. 1]. Schedule A/B also lists the same household goods, clothing, and jewelry as the First Seilheimer Schedules, valued at $1,300.00, but omits any bank accounts or silver coins.  [case no. 20-30081, docket no. 1].

26.  Schedule C exempts 1509 Perryton Drive, Household Goods, Electronics, Sporting

Items and Clothing under the state and federal non-bankruptcy exemptions. [case no. 20-30081, docket no. 1].

27.   On February 13, 2020, both Mr. Seilheimer and Hampton appeared at the 341 Meeting of Creditors. Although Mr. Seilheimer appeared at the 341 Meeting, much of the testimony and information was provided by Hampton.

28.   According to testimony at the 341 Meeting, Hampton and Mr. Seilheimer used an undisclosed petition preparer to complete Mr. Seilheimer's bankruptcy paperwork. Hampton and Mr. Seilheimer paid $190 for these services.

29.   The Trustee suggested to Mr. Seilheimer and Hampton that Mr. Seilheimer obtain legal counsel to assist with the bankruptcy case as no first payment was made and no plan was filed.

30.   On May 1, 2020, the Second Seilheimer Case was dismissed for Mr. Seilheimer's failure to appear at the 341 meeting and provide documents to the trustee to establish identity. [case no. 20-30081, docket no. 42].

**Third Seilheimer Case**

31.   On September 7, 2021, Mr. Seilheimer filed case 21-31614-MVL-13. ("Third Seilheimer Case")

32.   Mr. Seilheimer filed the Third Seilheimer Case *pro se.*

33.   The Petition does not indicate Mr. Seilheimer received any assistance in filling out his bankruptcy forms. [case 21-31614, docket no. 1].

34.   However, the Petition in the Third Seilheimer Case reflects the following:

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

| ✗ _Donald Ray Seilheimer_ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date _09 07 2021_ | Date _____ |
| MM / DD / YYYY | MM / DD / YYYY |
| Contact phone _586_ | Contact phone _____ |
| Cell phone _214-586-4652_ | Cell phone _____ |
| Email address _N3APhelpers@sbcglobal.NET_ | Email address _____ |

_N3APhelpers@sbcglobal.NET_

**Voluntary Petition for Individuals Filing for Bankruptcy**                     page 8

35.  The email address: N3APHELPERS@SBCGLOBAL.NET is the same email address used by Hampton in the Present Case.

36.  The phone number 214-586-4625 is identical to the phone number provided for Hampton in the Motion to Dismiss, *infra* ¶ 77, and Second Seilheimer Petition, supra ¶ 55.

37.  The Petition fails to disclose any payments made to Hampton or other entities to assist with the filing of the Third Seilheimer Case.

38.  On October 28, 2021, the Third Seilheimer Case was dismissed with prejudice for 180 days for Mr. Seilheimer's serial filings. [case 21-31614, docket no. 15].

**Foreclosure of 2910 Perryton, Dallas**

39.  Mr. Seilheimer still owns 1509 Perryton. *See supra* ¶ 26.

40.  Mr. Seilheimer also owned property at 2910 Perryton, Dallas, Texas 75224 ("2910 Perryton"). *See supra* ¶ 26.

41.  2910 Perryton was foreclosed on February 1, 2022.[13]  The sales price was $152,500.

---

[13] Trustee Exhibit T-19.

The excess proceeds of the foreclosure totaled $62,421.82. 2910 Perryton was resold twice. The last sales price was $209,000.[14]

42.  On March 10, 2023, the law firm of Barrett Daffin Frappier Turner & Engel, LLC FedExed the check for $62,421.82 to Hampton. Mr. Seilheimer and Hampton attempted to cash the $62,421.82 check at Texas Capital Bank.

43.  On March 31, 2023, $57,423.55 of the check was deposited into Mr. Seilheimer's bank account at Texas Capital Bank. Mr. Seilheimer is the sole signatory on this account.

44.  According to Hampton, $3,000.00 was cashed and given to him for reimbursement of money spent to hire an attorney, Katrina Kershner.[15]

45.  The remaining $2,000.00 was cashed and given to Mr. Seilheimer.

46.  On April 19, 2023, Mr. Seilheimer transferred $44,210.91 via wire transfer to Rufus Management.

47.  The Present Case was still pending as of April 19, 2023.  *See infra* ¶60.

48.  As of July 31, 2023, $6,497.18 remains in this account.

49.  Texas Capital Bank referred Hampton to the Dallas Police for potential elder fraud abuse.

50.  1509 Perryton was posted for an April 2023 foreclosure.

**Present Case**

51.  Mr. Seilheimer filed this bankruptcy case in the Northern District of Texas, case number 23-30671-SGJ-13, on April 4, 2023 ("Present Case").  Mr. Seilheimer filed his case *pro*

---

[14] Trustee Exhibit T-A and E.
[15] Transcript of the June 20, 2023 Show Cause hearing; 64:6-9. Trustee Exhibit T-17.

*se*.

52.   Mr. Seilheimer appeared in person at the Bankruptcy Clerk's Office and presented his

driver's license and Social Security card as proof of his identity.  [docket no. 6]

53.   Mr. Seilheimer's Petition lists the following previously filed cases:

54.   Page 9 of Mr. Seilheimer's Petition provides:


[remainder of page intentionally left blank]

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes. Name of Person_____.
       Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

| | |
|---|---|
| ✖ *Donell Ray Seilheimer* | ✖ _____ |
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date    04/03/2023 | Date _____ |
|         MM / DD  / YYYY |          MM /  DD / YYYY |
|     Contact phone  214-586-4652 | Contact phone _____ |
| Cell phone   214-606-3769 | Cell phone _____ |
| Email address  n3aphelpers@sbcglobal.net | Email address _____ |

55.  The Petition fails to disclose it was prepared by a non-attorney bankruptcy petition preparer.  11 U.S.C. § 110(c) (requiring disclosure if a petition preparer is involved). The Petition consists of 13 pages. The 13 pages do not include a notice by a non-attorney bankruptcy petition preparer as required by 11 U.S.C. § 110(b)(2).

56.  No declaration disclosing any fee received from or on behalf of the debtor within the twelve (12) months immediately prior to the filing of the case, and any unpaid fees charged to the debtor, has been filed as required by 11 U.S.C. § 110(h)(2).

57.  To date, Mr. Seilheimer has failed to file Schedules, a Statement of Financial Affairs, or a Chapter 13 Plan.

58.  Tom Powers is serving as the Chapter 13 Trustee. ("Chapter 13 Trustee").

59.    On April 21, 2023, the Court dismissed the case without prejudice for failure to file these documents. [docket no. 12].   On May 2, 2023, the Chapter 13 Trustee filed his Second Amended Motion to Amend Order Dismissing Case ("Motion to Reopen").  [docket no. 20].

60.    The Motion to Reopen states:

5.    Trustee has since received a solicitation letter from a firm that offers to obtain funds the Debtor is entitled to and that is currently held by third parties. Trustee has been advised the Debtor had non-exempt real property foreclosed upon by a judgment creditor which generated excess proceeds, possibly in the range of $60,000.

6.    It appears a gentleman who goes by Pastor Rufus Hampton is advising the Debtor. Mr. Hampton operates an organization known as N3AP Justice Center ("N3AP"). The Debtor's Petition lists the telephone number and email address of N3AP as the contact information of the Debtor. N3AP's information is also listed on case nos. **20-30081-HDH-13** and **21-31614-MVL-13**.

7.    Mr. Hampton was involved in the Debtor's case: **20-30081-HDH-13** and appeared at the 341 meeting. (See Exhibit A).  Mr. Seilheimer suffered an aneurysm in May of 2020 and it is clear from the 341 transcript that he was confused and had trouble remembering facts.

[docket no 20, page 2].

61.    The Motion to Reopen sought both to reopen the Present Case and issue a Show Cause Order directing Mr. Seilheimer, Hampton, and N3AP to appear and explain the bankruptcy filing and Debtor's failure to file a plan and schedules. [docket no. 20, page 3].

62.    On May 18, 2023, the Court issued its Show Cause Order, ordering the following:

It is **FURTHER ORDERED**, **ADJUDGED** and **DECREED** Donald Roy Seilheimer, Rufus Hampton, and a member of the Board of Directors of N3APJC, Inc., dba N3AP Justice Center, shall appear, in person, before the Court at 9:30 a.m. on June 20, 2023, and SHOW CAUSE:

1. Why the Debtor filed this bankruptcy;

2. Why the Debtor has not prosecuted this bankruptcy;

3. Provide testimony and documentary evidence, including bank statements, deposit slips and checks of the receipt and disbursement of the excess proceeds of sale from the sale of 2910 Perryton Drive, Dallas, Texas evidenced by a check FedExed to Rufus Hampton by Barrett Daffin Frappier Turner & Engel, LLP on or about March 10, 2023, in the amount of $62,421.82.

The Court strongly advises Mr. Seilheimer to obtain legal counsel in this matter.

[docket no. 24].

63.    On June 20, 2023, the Court conducted an initial hearing on the Show Cause Order. Mr. Seilheimer failed to appear at the Show Cause hearing.  Hampton appeared via WebEx.

64.    Hampton testified he refused to produce any documents in response to the Show Cause Order since it was "invading or getting into my -- my right as a power of attorney, that what my power of attorney allows me to do so."[16]

65.  Hampton attempted to invoke both power of attorney privilege as well as pastor privilege to refuse to answer whether additional funds had been withdrawn from the Texas Capital Account. Hampton testified this bankruptcy case was filed to "buy time" to work out a deal on

---

[16] Transcript; June 20, 2023 Show Cause hearing: 59:8-10. Trustee Exhibit T-17.

1509 Perryton and that neither he nor Mr. Seilheimer intended to proceed in bankruptcy court.[17]

66.  Hampton also testified:

```
13          MR. HAMPTON:  Well, that's what I'm -- that's what
14   I'm challenging under the religious rights deal, that I have
15   a right to -- not to practice law.  I have a right to
16   protect God's sheep under Romans 13, which deals with
17   obeying the law and everything like that.  So as a pastor,
18   if I can't, you know, direct people about the law, you know,
19   and the Bible says that they should do it.
```

Transcript: June 20, 2023, Show Cause Hearing 93:13-19.[18]

67.  The Court continued the Show Cause hearing to July 17, 2023, requiring Mr. Seilheimer, Hampton and a member of the Board of Directors of N3APJC, Inc. dba N3AP Justice Center to appear in person ("Continued Show Cause Hearing"). [docket no. 38].

68.  On July 17, 2023, the Court conducted the Continued Show Cause Hearing. Hampton appeared in person approximately 30 minutes late. Hampton testified he prepared a Motion to Dismiss Mr. Seilheimer's case and was going to file it with the clerk's office after the conclusion of the hearing.[19]

69.  Hampton further testified that he believed that the Power of Attorney he has over Mr. Seilheimer's finances allows him to file both bankruptcy petitions and motions to dismiss those cases.[20] Paragraph 8 of the Power of Attorney allows Rufus Hampton to charge reasonable fee for

---

[17] Transcript, June 20, 2023 Show Cause hearing: 78:20-25. Trustee Exhibit T-17.
[18] Trustee Exhibit T-17.
[19] Transcript of July 17, 2023 Show Cause hearing: 20:8-24. Trustee Exhibit T-18.
[20] Transcript of July 17, 2023 Show Cause hearing: 21:15-21. Trustee Exhibit T-18.

his services.[21] Rufus Hampton has power of attorney for at least two other individuals. *infra* ¶ 89 and 90. The Court notes, only the power of attorney for Mr. Seilheimer permits Hampton to charge a reasonable fee.

70. Hampton further testified the $62,421.82 is not property of this bankruptcy estate, but instead belongs to the probate estate of Mr. Seilheimer's mother. Hampton refused to answer any questions about the disposition of the funds.[22]

71. Finally, Hampton testified Mr. Seilheimer had some physical issues that prevented him from appearing in person at the Continued Show Cause Hearing.[23]

72. Based on the ongoing failure of Mr. Seilheimer to appear in court, the lack of transparency of the disposition of the funds from the 2910 Perryton Foreclosure and Hampton's testimony at the Continued Show Cause Hearing, the Court directed the appointment of Marilyn D. Garner as Guardian Ad Litem over Mr. Seilheimer for the limited purpose of prosecuting and administering the bankruptcy case on his behalf. [docket no. 51].

73. Ms. Garner subsequently attempted to speak with Mr. Seilheimer by telephone, however, at the direction of Hampton, he refused to speak with Ms. Garner, or otherwise meet with her to discuss his financial condition, the filing of this case, and the disbursements from his Texas Capital bank account. Rufus Hampton prepared a script for Mr. Seilheimer to use in the conversation.[24]

74. Ms. Garner has frozen the Texas Capital bank account.

75. On July 17, 2023, immediately after the conclusion of the Continued Show Cause

---

[21] Trustee Exhibit T-7.
[22] Transcript of July 17, 2023 Show Cause hearing: 54:23-55:3. Trustee Exhibit T-18.
[23] Transcript of July 17, 2023 Show Cause hearing: 23:5-7. Trustee Exhibit T-18.
[24] Trustee Exhibit T-IMP9.

Hearing, Hampton filed the Debtor's Motion to Dismiss Chapter 13 Bankruptcy Case ("Debtor's Motion to Dismiss"). [docket no. 44].

76.    The Debtor's Motion to Dismiss is signed as follows:

Respectfully submitted,

*Donald Roy Seilheimer by Pastor Rufus Hampton, Harpty POA*

Donald Roy Seilheimer by Pastor Rufus Hampton
1509 Perryton Drive
Dallas, TX 75224
(214) 586-4652

*Rufus Hampton, POA*

*Rufus Hampton, POA*
*11618 Colmar Street*
*Dallas, TX 75218*
*214-586-4652*
*pastorrufus@yahoo.com*

77.    The Debtor's Motion to Dismiss attaches a "Durable Power of Attorney for Financial Management" executed by Donald Seilheimer on April 6, 2022, appointing Hampton as his Attorney-in-fact for financial management. [docket no. 44, pages 12-14]. The Durable Power of Attorney is revoked by its own terms when a guardian is appointed for the estate of Mr. Seilheimer.[25]

78.    The Debtor's Motion to Dismiss was set concurrently with the Continued Show Cause hearing for August 21, 2023. [docket no. 52].

79.    Hampton failed to produce evidence of the disposition of the proceeds of the sale of 2910 Perryton Drive.

80.    Although he testified on June 20, 2023, he personally received $3,000.00 when the

---

[25] Trustee Exhibit T-7.

$62,421.82 check was deposited, Hampton failed to produce evidence of how much he has been paid in connection with this bankruptcy case, membership fees of N3AP, or in connection with the sale of 2910 Perryton Drive.

81.     On August 21, 2023, the Court called for hearing the Continued Order to Show Cause, Docket No. 24, issued on May 17, 2023, and continued from June 20, 2023, 2023and July 17, 2023. Thomas D. Powers, Chapter 13 Trustee appeared, Elizabeth Ziegler Young appeared on behalf of the United States Trustee, Marilyn Garner Guardian Ad Litem appeared, and Rufus Hampton appeared 20 minutes late on behalf of himself and as an Officer of N3AP Justice Center. The Debtor, Donald Seilheimer, failed to appear in the morning and was brought to Court at 3 p.m. by the U.S. Marshall Service. The Court notes Mr. Seilheimer did not appear to have any difficulty in appearing and testifying.

82.     Hampton holds himself as a tax law expert and legal expert. [26] He has been advising the Debtor on legal and finance matters since 2020 and the debtor has relied on Rufus Hampton's advice. Hampton advised the debtor that using the Durable Power of Attorney Mr. Seilheimer signed he would hire an attorney "to deal with Deutsche Bank on the foreclosure"[27].

83.      Despite his control over Mr. Seilheimer's financial affairs, Hampton allowed the property at 2910 Perryton to be foreclosed on without attempting to sell the property. Despite his promise to Mr. Seilheimer, Hampton has not hired any attorneys to assist Donald Seilheimer in getting Letters Testamentary issued in the Shelia Seilheimer's probate estate or "to deal with Deutsche Bank on the foreclosure".

84.     The Durable Power of Attorney was signed by Donald Seilheimer and given to

---

[26] Transcript of June 20, 2023 Show Cause Hearing 91:22-92:1. Trustee's Exhibit T-17.
[27] Transcript of July 17, 2023 Show Cause Hearing 43.9. Trustee Exhibit T-18.

Rufus Hampton on March 29, 2022. The signature of Donald Seilheimer was notarized on April 6, 2022, by Lori Michelle Hoehn, Hampton's wife. Donald Seilheimer testified he did not sign the Durable Power of Attorney before Lori Hoehn.

85.     Hampton used the Durable Power of Attorney to file pleadings on behalf of Donald Seilheimer in: *Donald Seilheimer v. Soundview* DC-22-01336 In the District Court of Dallas County, 101st Judicial District ("*Soundview*") Trustee Exhibit T6 and 6A and *Chefach Holdings, LLC v. Donald Seilheimer* J82200 142 P, In the Justice Court Precinct 5, Place 2, Dallas County Texas ("*Chefach*").[28]

86.     The *Soundview* case was filed to void the mortgage. The relief was denied.[29]

87.     The *Chefach* litigation resulted from a Writ of Execution filed by Donald Seilheimer at the direction of Hampton. Donald Seilheimer, at the direction of Hampton, swore under oath that he was a "TENNANT BY SUFFERANCE". Trustee Impeachment Exhibit T–IMP2. As a result of Hampton's unauthorized practice of law, *Chefach* obtained a judgement in the amount of $10,250 against Donald Seilheimer.[30]

88.     Hampton has used a similar Durable Power of Attorney to represent Robin Fanning in *Robin Fanning v. Trinity Valley Electric* CV05721, County Court of Law Van Zandt County. As a result of Hampton's representation Robin Fanning was evicted from his home.[31]  The Durable Power of Attorney precludes Hampton from receiving any compensation.

89.     Hampton also used a similar Power of Attorney to represent Theodis Lyons in *Series 104 of Valeni, LLC v Theodis Lyons, III et al* CC-21-03472 – E County Court at Law

---

[28] Trustee Exhibit T-12A.
[29] Trustee Exhibit T-9.
[30] Trustee Exhibit T-12B, C, D, and E.
[31] Trustee Exhibit T-13A, B, C, D, and E.

Number 5, Dallas County, Texas. As a result of Hampton's representation, Theodis Lyons'

requested relief was denied.[32]  The Durable Power of Attorney precludes Hampton from receiving

any compensation.

90.    Hampton has testified under oath to three different explanations regarding the

taking of $44,210.91 from the Debtor.  Hampton testified there was no written agreement signed

by Donald Seilheimer agreeing to the expenses. On April 12, 2023, Hampton sent Donald

Seilheimer a text message with an attached photo outlining a division of the $62,421.82 check.[33]

The division was as follows:

| | | |
|---|---|---|
| 1. | Total Check Amount | $62,421.82 |
| 2. | ½ of check | - $31,210.91 |
| 3. | 1st Draw | <u>$3,000.00</u> |
| 4. | Subtotal | $28,210.91 |
| 5. | Investment in cars | +$12,000.00 |
| 6. | Loan to Freddy teeth | <u>$4,000.00</u> |
| 7. | Total | $44,210.91 |

| | | |
|---|---|---|
| 1. | Share ½ of check Amount | $31,210.91 |
| 2. | Less 1st draw | - <u>$2,000.00</u> |
| 3. | Sub total | $29,210.91 |
| 4. | Less investment in cars | $12,000.00 |
| 5. | Less total Freddy teeth | <u>-$4,000.00</u> |

---

[32] Trustee Exhibit T-11A, B, C, D, E, F, G, H, I and J.
[33] Trustee Exhibit T-IMP6.

6.   Total                                                    $13,210.91

91.      Hampton on August 7, 2023, presented a spreadsheet to Donald Seilheimer detailing

the monies he alleged Donald Seilheimer owed him.[34]   The division of the $62,421.62 on the

spreadsheet differs from the alleged agreement in Trustee Exhibit T – IMP6. Hampton now

declares the $44,210.91 he took is property of the probate estate of Sheila Seilheimer and he does

not need to account for it. [35]

92.       Hampton left three vehicles at Mr. Seilheimer's residence as part of the car $12,500

investment paid by Mr. Seilheimer. The titles to the vehicles were never transferred to Mr.

Seilheimer. Mr. Seilheimer, according to Hampton, was to be provided a lien on the vehicles. They

were to be repaired and leased or sold by Mr. Seilheimer to earn income. They are owned by

Hampton. Hampton was not able to explain why a lien holder (Mr. Seilheimer) was responsible

for repairing and leasing or selling the vehicles. Mr. Seilheimer has no experience in repairing

vehicles or leasing vehicles. Mr. Seilheimer has not repaired or leased or sold any of the vehicles

and has received no income from the investment.

93.       The spreadsheet Hampton prepared lists "debts" he claims Mr. Seilheimer owes

him.[36]  The listed debts include monies paid by Hampton to Robin Fanning, Katrina Kershner, the

Lyons Foundation, Mr. Seilheimer's utilities, Court Costs and Hampton's alleged contingent

liability for interfering with a December 2019 Contract to Sell 2910 Perryton.  Hampton failed to

produce any evidence that Mr. Seilheimer owes any of the debts.   Hampton has not filed a claim

in the **Present Case.**

---

[34] Trustee Exhibit T-IMP7.
[35] July 17 SC 55:13-16.
[36] Trustee Exhibit T-IMP7.

94.     Hampton advised Mr. Seilheimer he did not have to provide documents or appear in court in person pursuant to the Court's Show Cause Orders of May 18, 2023, Docket No. 24, June 21, 2023, Docket No. 38 and July 20, 2023, Docket No. 52, because Hampton was going to file a *Writ of Mandamus*. To date, Hampton has not filed a *Writ of Mandamus*.

95.     The Court continued the August 21, 2023, hearing to August 28, 2023. Hampton and Mr. Seilheimer appeared. Hampton testified that despite the Court's Order to not contact Mr. Seilheimer, directly or indirectly, he did communicate to Mr. Seilheimer through his business associate Theodis Lyons.

96.     Mr. Seilheimer appeared and testified he wanted Hampton to return the $44,210.91 to him. Hampton subsequently questioned Mr. Seilheimer. Following the questioning, Hampton told Mr. Seilheimer he had been "brainwashed". Hampton continues to refuse to return the $44,210.91 and to produce the documents as ordered by the Court.

97.     This bankruptcy case was filed in an effort to "buy time" to allow Hampton and Mr. Seilheimer to either continue litigation or proceed with an out of court workout with Mr. Seilheimer's secured lenders, without any intention of proceeding with this case.  While this case was pending, Hampton received at least $44,210.91 post-petition from non-exempt bankruptcy estate funds.

98.     The Court finds Hampton's testimony concerning the health of Donald Seilheimer to not be credible and that the testimony was designed to prevent Donald Seilheimer from testifying.

99.     The Court further finds Hampton's three explanations regarding the division of the $62,461.62, including the "debts" owed by Mr. Seilheimer to Hampton to not be credible.

100.    The Court further finds Hampton has exerted undue influence over Donald

Seilheimer and that his actions have been detrimental to and caused damage to Donald Seilheimer.

## <u>CONCLUSIONS OF LAW</u>

101.     The $62,421.62 in Texas Capital Bank was property of the bankruptcy estate. The $44,210.91 Hampton took is property of the estate regardless of the fact the probate of Sheila Seilheimer is open. 11 U.S.C. 541(a)(6). In *McLain v. Robert* 516 F.3d 301, 312 (5th Cir. 2008), the court cited *In re Dibiase,* 270 B.R. 673, 676 (Bankr. W.D.Tex.2001): "This generous provision sweeps into the bankruptcy estate all interests held by the debtor - even future, non-possessory, contingent, speculative, and derivative interests".

102.     Hampton has willfully violated the automatic stay of 11 U.S.C. 362 by taking the $44,210.91 and after demand refusing to return the funds.

103.     Debtors do not have an absolute right to convert or dismiss their case when they have acted in bad faith both before and after the filing of their original petition. *Marrama v. Citizens Bank,* 549 U.S. 365 (2007).

104.     The Supreme Court held that the language of § 706(a) of the Bankruptcy Code does not give chapter 7 debtors an absolute right to convert their case, and nothing within the statute "limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 374-75.

105.     The Supreme Court did not define the standard of bad faith necessary to deny conversion from chapter 7. *Id.* at 375, n. 11.   The Fifth Circuit Court of Appeals has held that bad faith may encompass "'pre-petition bad faith conduct,' post-petition bad faith conduct, or petitions that simply serve no legitimate bankruptcy purpose." *In re Krueger,* 812 F.3d 365, 370 (5th Cir. 2016)(citations omitted). *In re Elliott*, 506 Fed.App. 291, 294 (5th Cir. 2013) (finding of bad faith

not erroneous when debtor's schedules, statement of financial affairs, and means test contained a large number of misrepresentations and omissions).

106.      Applying the framework of *Marrama*, the Fifth Circuit Court of Appeals in *In re Jacobsen* held that a debtor does not have an absolute right to dismiss his case under § 1307(b) to escape conversion to chapter 7 under § 1307(c).  *In re Jacobsen,* 609 F.3d 647, 660 (5th Cir. 2010). The *Jacobsen* Court "decline[d] to read § 1307(b) as an "escape hatch," *In re Molitor,* 76 F.3d at 220, from which to escape a conversion motion filed under § 1307(c)."  *Id.* at 661.

107.      Hampton's conduct, which, according to his sworn testimony he took pursuant to Durable Power of Attorney in this case including; the directing of the Debtor to file this bankruptcy to delay foreclosure, the failure to file Bankruptcy Schedules and Statement of Financial Affairs, the directing of the Debtor to disobey court orders to appear, the failure to turn over property of the estate ($44,210.91) and documents and the willful and continued violation of the automatic stay by taking the $44,210.91 and refusing to return the funds are more than sufficient grounds to deny the Debtor's Motion to Dismiss.

108.      Where appropriate the Court's Findings of Fact may be interpreted as Conclusions of Law and vice versa.

The Court, based on the **Findings of Fact and Conclusions of Law** makes the following order,

**IT IS ORDERED** the Debtor's Motion to Dismiss Chapter 13 Bankruptcy Case, (Docket No. 44) is DENIED.

###End of Order###

23